## UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

**EMERITO ESTRADA RIVERA-ISUZU DE P.R., INC.,**

      **Plaintiff,**

      **vs.**

**CONSUMERS UNION OF UNITED STATES, INC.,**

      **Defendant.**

**CIVIL NO. 97-2936 (DRD)**



### OPINION AND ORDER

Pending the Court is Defendant's, Consumers Union of United States, Inc. ("CU"), Motion to Dismiss (Docket No.6), requesting dismissal due to the Plaintiff's, Emerito Estrada Rivera-Isuzu de P.R., Inc. ("EER"), failure to state a claim (FED. R. CIV. P. 12(b)(6)), and failure to specifically state special damages (FED. R. CIV. P. 9(g)).  Essentially, CU contends that their evaluations of the Isuzu Trooper ("Trooper") are protected by the First Amendment of the Constitution.  Plaintiff's filed an Opposition to Dismissal (Docket No. 17).  In addition, a Reply to Opposition to Dismiss (Docket No. 18), and a Surreply In Opposition To Dismissal (Docket No. 19) were filed.  For the following reasons Defendant's Motion To Dismiss is hereby **GRANTED**  and thus, this case is **DISMISSED**.

### I.  BACKGROUND

**A.  THE COMPLAINT**

EER alleges the following claims against CU: (1) defamation from continuing course of



conduct; (2) product disparagement from continuing course of conduct; (3) intentional

interference with business relations; and (4) declaratory judgement for declaration of falsity.

The manufacturer of the Trooper is Isuzu Motors Ltd. a Japanese corporation. EER is a

corporation of Puerto Rico with its principal place of business in San Juan, Puerto Rico. EER is

the distributor for the Trooper in Puerto Rico and in the United States Virgin Islands, Saint

Thomas and Saint John.

Prior to the Defendant's defamatory statements, EER contends, the Trooper enjoyed an

excellent reputation in Puerto Rico, Saint Thomas, and Saint John. EER avers that commencing

in August 1996, and continuing to date, CU in its magazine Consumer Reports and in other

numerous print, broadcast and Internet publications, presented a series of false statements about

Isuzu, EER and the Trooper. These statements were that (a) the 1995-96 Trooper is more prone

to tip-up or roll over than all other sport utility vehicles ("SUVs"), (b) the Trooper was and is

dangerous and unsafe when operated under "real- world" conditions, (c) the 1995-96 Trooper

was and is uniquely prone to tip-up on two wheels or roll over during "real-world" driving

maneuvers, (d) Isuzu and its officials refused to meet with Defendant's purported test data

regarding the Trooper's alleged safety problems, (e) Isuzu and its officials were ignoring serious

safety problems and knowingly placing consumers at grave risk- "all in the name of profits", (f)

the 1995-96 Trooper's lack of roll over resistance is so dangerous that Isuzu should promptly

replace any such vehicles or provide consumers with a refund, (g) unlike all other SUVs, the

1995-96 Trooper is so inherently and uniquely prone to roll over that it should only be driven

when necessary and using extreme caution, (h) unlike all other SUVs, the 1995-96 Trooper is so

inherently and uniquely prone to tip-up on two wheels that it should only be driven when

-2-

necessary and using extreme caution, (i) the normal reaction of a driver to a child running into the road would cause the 1995-96 Trooper to tip-up or roll over, while all other SUVs would not, (j) during the CU Short Course Maneuver, the 1995-96 Trooper, while driven under the same conditions as all other SUVs, lifted its wheels off the road several times and threatened to roll over, (k) only the driving skill of a professional test driver would prevent the 1995-96 Trooper from rolling over under real-world driving conditions, (l) only one other vehicle in eight years of CU testing over the Short Course Maneuver had the same lack of roll over resistance as the 1995-96 Trooper, (m) suspension upgrades made the 1995-96 Trooper uniquely and inherently lacking in roll over resistance, unlike prior Trooper models, and causes the vehicle to tip-up and roll over, and finally, (n) the 1995-96 Trooper would require modifications to its suspension to have comparable roll over resistance to all other SUVs.

Plaintiff argues that Defendant "rigged" the Trooper test results by attaching "outriggers" to the vehicle as part of Defendants campaign to force the National Highway Transportation Safety Administration (NHTSA) to establish a federal roll over safety standard. Furthermore, Plaintiff alleges that Defendant knew its allegedly defamatory statements about the Trooper were false and yet continued to publish and disseminate the defamatory statements. Further, Plaintiff contends that the safety record of the 1995-96 Trooper as well as the prior model year of the Trooper (both of which defendant rated as "Recommended") is comparable to the safety records of other SUVs.

Plaintiff sets forth the allegedly defamatory statements in their sixty two (62) page complaint. In brief, Plaintiff alleges that Defendant began a campaign that defamed Isuzu, the Trooper and EER, beginning on August 20, 1996, by holding a press conference and by

-3-

publishing: (1) an August 20, 1996, press release announcing that Consumer Reports found the

1995-96 Trooper "Not Acceptable" because of a rollover hazard; (2) a recorded telephone

message at a toll number; (3) a "full test report" in online databases and in Consumer Reports

"Facts by Fax" service; (4) the October, 1996, issue of Consumer Reports; (5) David Pittle's

statements on several television programs including NBC's "Today" and CBS' "This Morning";

(6) the November, 1996, issue of Consumer Reports; (7) a December 23, 1996, press release and

Internet posting and transmission via PR Newswire regarding CU's communications with

NHTSA regarding the Trooper and CU's response to Isuzu's criticism of the CU findings; (8) the

March, 1997, issue of Consumer Reports; (9) a May 14, 1997 press release entitled "Statement of

Dr. R. David Pittle, Vice President and Technical Director Consumers Union (Publisher of

Consumer Reports Magazine)," reiterating CU's "Not Acceptable" rating of the 1995-96

Trooper; (10) a July 27, 1997, Dow Jones News Service article quoting Pittle as saying he did

not expect CU to retract its reports on the Trooper despite the NHTSA findings and Isuzu's

request for retraction; (11) a July 28, 1997, USA Today article reiterating Pittle's Statements and

CU's position; and (12) similar defamatory or disparaging false statements about the 1995-96

Trooper of the same substance, type and effect as the statements alleged above.


## B. DEFENDANT'S MOTION TO DISMISS

Defendant's motion, (Docket No.6), requests dismissal based on the following grounds:

(1) Consumers Union's evaluations of the Trooper are protected by the First Amendment; (2) the

first cause of action, defamation from continuing course of conduct, fails to state an actionable

claim for corporate defamation; (3) the second cause of action, product disparagement from

-4-

continuing course of conduct, fails to state an actionable claim for product disparagement; (4) the

third cause of action, intentional interference with business relations, fails to state a claim for

tortious interference with prospective business relations; (5) the fourth cause of action,

declaratory judgement for declaration of falsity, inappropriately seeks a declaratory judgement

on a factual question involving a technical dispute.


## II. MOTION TO DISMISS / SUMMARY JUDGMENT STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts

alleged, taken as true, do not justify recovery. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

The pleading requirement, however, is "not entirely a toothless tiger." Dartmouth Review v.

Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). "The threshold [for stating a claim] may be

low, but it is real." Gooly v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). In order to

survive a motion to dismiss, a plaintiff must set forth "factual allegations, either direct or

inferential, regarding each material element necessary to sustain recovery." Id. at 515. Although

all inferences must be made in the plaintiff's favor, this court need not accept "bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

This is true both as to facts, and interpretation of law. See Litton Indus., Inc. v. Colon, 587 F.2d

70, 74 (1st Cir. 1978) ("[O]ur focus is limited to the allegations of the complaint. The question is

whether a liberal reading of [the complaint] can reasonably admit of a claim." (Internal

quotations omitted)). More recently in the case of Brown v. Hot, Sexy and Safer Prods., Inc., 68

F. 3d 525, 530 (1st Cir. 1995), the standard was set forth as follows:

"We accept the allegations of the complaint as true and determine whether under

AO 72A
(Rev.8/82)

any theory, the allegations are sufficient to state a cause of action in accordance with the law (citations omitted) . . . ; because only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusion or interpretation of law."

In opposing a Rule 12(b)(6) motion to dismiss, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. Id. at 23 (citing Correa-Martinez v. Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir. 1990); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989); Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir. 1957)).

Moreover, when the parties have added documents outside of the pleadings to the 12(b)(6) motion, Rule 12(b) allows the Court to convert the motion to dismiss into a motion for summary judgment under FED R. CIV. PROC. 56. Garita Hotel, Ltd. v. Ponce Federal Bank, 958 F.2d 15, 18-19 (1st Cir. 1992). The approach employed in making this conversion is a "functional approach." If documents outside the pleadings are included and the Court uses those documents in making its determination, the Court will adjudicate the movant's motion following the standards for summary judgment. C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d 41, 43 (1st Cri. 1998).

The Court will grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c). To defeat a motion for summary judgment, the resisting party will have to show the existence of "a trial worthy issue as to some material facts." Cortes-Irizarry v.

-6-

Corporación Insular,111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if the same

"potentially affect[s] the suit's determination." Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st

Cir. 1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the

evidence and drawing all reasonable inferences helpful to the party resisting summary judgment,

could resolve the dispute in that party's favor." Cortes-Irizarry, 111 F.3d at 187. The movant of

course, must not only show that there is "no genuine issue of material facts," but also, that he is

"entitled to judgment as a matter of law." Vega-Rodriguez, 110 F.3d at 178. Further, the court

is required to examine the record "drawing all reasonable inferences helpful to the party resisting

summary judgment." Cortes-Irizarry. 111 F.3d at 187. There is "no room for credibility

determinations, no room for the measured weighing of conflicting evidence such as the trial

process entails, no room for the judge to superimpose his own ideas of probability and likelihood

. . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The

facts must be examined under the above criteria because on a potential appeal the appellate court

examines "the undisputed facts in the light most congenial to the appellants and adopts their

version of any contested facts which are material to our consideration of the issues."

Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

      In the instant case defendants' motions and plaintiffs' oppositions have been accompanied

with documents which attempt to show the inexistence or existence, respectively, of any genuine

issue of material fact. The Court has considered these documents in reaching its determination.

Accordingly, defendants' motions are adjudicated under the standards set forth above for motions

for summary judgment.

## III. THE FIRST AMENDMENT

CU argues that EER's intentional interference claims, as well as their other claims, do not, and cannot, state a claim on which relief may be granted.   In support of this argument CU, states, <u>inter alia</u>, that the First Amendment establishes an absolute bar to liability.  For the reasons that follow, the Court agrees.

The First Amendment establishes a wide zone of protection within which the press is able to publish without fear of incurring liability on the basis of injurious falsehood. For this reason the First Amendment requires that an allegedly defamatory statement be "of and concerning" the plaintiff, or be "of and concerning," the plaintiff in some way. <u>See</u> <u>Reader's Digest Assn. v. Superior Court</u>, 690 P.2d. 610 (1984); <u>Bose Corp. v. Consumers Union of United States, Inc.</u>, 466 U.S.485, 104 S.Ct. 1949 (1984); <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964).  In <u>Bose Corp.</u>, the Supreme Court stated that "[t]he First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty - and thus a good unto itself - but also is essential to the common quest of society as a whole."  <u>Bose Corp. v. Consumers Union of United States, Inc.</u>, 466 U.S. at 503-504, 104 S.Ct. at 1961.

Allegedly defamatory statements must be made about an individual personally.  <u>See</u> <u>New York Times v. Sullivan</u>, 376 U.S. 254, 288-292 (1964). The "of and concerning" doctrine established in <u>New York</u>, 376 U.S. 254, bars a libel action where there has been an impersonal attack or criticism on a matter of public interest, rather than an attack on a person.

The United States District Court for the District of Puerto Rico as well as the Supreme Court of Puerto Rico have consistently and fully applied the "of and concerning" rule.  A person may not maintain a cause of action for defamation unless the alleged defamatory statement is "of

and concerning" that person directly.  See Flamand v. American Int'l Group, Inc., 876 F.Supp.

356, 366 (D. P.R. 1994).  The Supreme Court of Puerto Rico, in Rodriguez v. El Vocero de P.R.,

Inc., 94 J.T.S. 13 (1994), cert. denied 114 S.Ct. 2744 (1994), confirms the applicability of the "of

and concerning" doctrine discussed in New York Times and Flamand.  The Puerto Rico Court

stated in pertinent part that:

> "[T]he Doctrine known as 'of and concerning' the plaintiff has emerged from
> common law defamation actions.  Under this doctrine, in all defamation actions the
> plaintiff must prove that the defamatory statements specifically refer to this person.
> The requirement of specific reference or statement 'of and concerning' plaintiff
> restricts the right to sue for injurious falsehood, since this is open to those who are
> direct targets of criticism, and denied to those who merely complain of nonspecific
> statements they deem harmful.  Blatty v. New York Times Co., 728 P.2d 1177
> (Cal.1986)."

Id. at 11503.[1]  Additionally, the Supreme Court of Puerto Rico, in Rosado v. Flour Int'l, 81

P.R.R. 592 (1959), held:

> "[D]efamation of a small group gives rise to no civil action on the part of an
> individual member of the group unless he can show special application of the
> defamatory matter to himself.  The problem is rather, one of identification.  It is
> essential for plaintiff to prove he is sufficiently identified as an individual by the
> libelous matter whether the group be large or small."

Id. at 599.

To allow a plaintiff who is not identified, neither expressly nor by clear implication, to

institute such an action poses an unjustifiable threat to society.  The absence of the "of and

concerning" requirement of the First Amendment of the Constitution of the United States could,

for example, invite any number of vexatious lawsuits and seriously interfere with public

---

[1] Official translation was provided by the Supreme Court of Puerto Rico, however, no official
citation has been entered as of this date.

discussion of issues, or groups, which are in the public eye.  Statements about religious, ethnic,

or political group could invite thousands of lawsuits from disgruntled members of these groups

claiming that the portrayal was inaccurate and thus libelous.  Such suits would be especially

damaging to the media, and could result in the public receiving less information about topics of

general concern.  See Michigan United Conservation Clubs v. CBS News, 485 F.Supp. 893, 896

(W.D. Mich. 1980), aff'd 665 F.2d 110 (6th Cir. 1981).

      In order to satisfy this requirement, "of and concerning" standard under the First

Amendment, the plaintiff must effectively plead that the statement at issue either expressly

mentioned him or refers to him by reasonable implication.  Kelly v. Johnson Publishing Co., 160

Cal.App.2d 718, 725, 325 P.2d 659 (1958).  For those same reasons, only the manufacturer of a

product has standing to assert an actionable product disparagement claim.  Distributors and retail

dealers are too remote to assert defamation and disparagement claims about a product.  See

Simmons Ford v. Consumers Union of the United States, Inc., 516 F.Supp. 742, 751 (S.D. N.Y.

1981).

      The allegedly defamatory and disparagement statements underlying Plaintiffs claims are

only "of and concerning" the Trooper and, arguably, the manufacturer of the Trooper, Isuzu

Motors Ltd., a Japanese Corporation.  The Court examines the matter "in context" and considers

"the totality of the circumstances."  See e.g. Phantom Touring, Inc. v. Affiliated Publications,

Inc., 953 F.2d 724, 727 (1st Cir. 1992) (citing McCabe v. Rattiner, 814 F.2d 839, 842 (1st Cir.

1987)).  After reviewing the statements in context, and considering the totality of the

circumstances, the statements at issue all involve CU's allegations that the Trooper is dangerous

because of manufacturing defects.  None of the Defendant's statements are "of and concerning"

-10-

the distributor.  See Simmons Ford v. Consumers Union of United States, Inc., 516 F.Supp. 742,

751 (S.D. N.Y. 1981) (First Amendment considerations preclude vicarious liability by anyone

other than manufacturer in product disparagement suit);  Isuzu Motors Ltd. v. Consumers Union

of United States, Inc., 12 F.Supp.2d 1035, 1045 (C.D. Cal. 1998).  The Court finds that the

statements forming the basis for this action can only be reasonably construed to refer to the

manufacturer of the Isuzu Trooper, and not the distributor.  See Simmons Ford v. Consumers

Union, 516 F.Supp. 742, 751 (S.D. N.Y. 1981) (denying a retailer of the allegedly defamed car

the right to sue for defamation where the allegedly defamatory statements concerned the car).

The Isuzu Court, in a case almost identical to the instant action, with respect to the Isuzu

distributor ruled as follows:

> "Looking at the statements in context, and considering the totality of the
> circumstances, the statements at issue all involve CU's allegations that the Trooper
> is dangerous because of the way it was manufactured.  See Couch v. San Juan
> Unified School Dist., 33 Cal.App.4th 1491, 1501, 39 Cal.Rptr.2d 848 (3d Dist. 1995)
> (statements must be considered in context under totality of circumstances).  None of
> the defendant's statements are about the Distributor or The Importers.  See Simmons
> Ford v. Consumers Union, 516 F.Supp. 742 (S.D.N.Y. 1981) (First Amendment
> considerations preclude vicarious liability by anyone other than manufacturer in
> product disparagement suit)."

Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F.Supp 2d 1035, 1045 (C.D. Cal.

1998).

Defendant's criticisms of the Trooper cannot be reasonably understood  to suggest that

the distributor is responsible for the supposed roll over risk presented by the Trooper as a result

of the design changes.  The fact that the distributor shares the name Isuzu with the manufacturer

does not show that the statements were "of and concerning" the plaintiff.  The Court finds that

Plaintiff has not stated a claim that statements about the 1995-96 Isuzu Trooper are "of and

-11-

concerning" the Plaintiff. The statements are "of and concerning" Isuzu, but not EER. Therefore, the Court holds that the First Amendment bars this claim because the statements are not "of and concerning" the Plaintiff. See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686 (1964).

Furthermore, the Court's holding militates the dismissal of all derivative claims which rely upon an element of libel. Accordingly, Plaintiff's product disparagement claims, see P.R. Laws Ann. tit. 32, §3142 (1902), as well as the request for a declaratory judgment[2] are **DISMISSED**.

## IV. DEFAMATION CLAIMS

A defamation claim entails plaintiffs proving (1) that the information is false, (2) that the information was published with full knowledge of its falsehood, (3) that the publication was negligent, and (4) that the plaintiff suffered real damages. Villanueva v. Hernandez Class, 91 J.T.S. 58, p. 8697 (P.R. 1991) (citing Torres-Silva v. El Mundo, 106 D.P.R. 415, 427, 106 P.R. Offic. Trans. 581-91, 598 (1977); Oliveras v. Paniagua, 115 D.P.R. 257 (1984); Sociedad de Gananciales v. Lopez, 116 D.P.R. 112, 115 (1985)).

---

[2] In the alternative, even if the Court had found the statements "of and concerning" the Plaintiff, under the Declaratory Judgement Act, 28 U.S.C. § 2201 the Court could not enter a declaratory judgment in Plaintiff's favor. Plaintiff is asking the court to resolve a scientific dispute regarding the Safety of the 1995-96 Isuzu Trooper under the Declaratory Judgement Act. For an identical claim as presented by Plaintiff, in Isuzu, the court held that the dispute did not concern legal rights and, therefore, declaratory relief is not available. See Isuzu Motors Ltd. v. Consumers Union of United States, 12 F.Supp.2d at 1049-1050; see generally Will v. Calvert Fire Insurance Company, 437 U.S. 655, 671 (1978), Green v. Mansour, 474 U.S. 64, 71 (1985); Leonardi v. Shell Oil Co., 219 Cal. App. 3d 547, 580, 264 Cal.Rptr. 883, 904 (3d Dist. 1990).

AO 72A
(Rev.8/82)

A person may not maintain a cause of action for defamation unless the alleged defamatory statement is "of and concerning" that person directly. See Flamand v American International Group, Inc., 876 F.Supp. 356, 366, 368 (D. P.R. 1994). In addition, under Article 1802, "a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done." P.R. LAWS ANN. tit. 31, §5141 (1956). Accordingly, under said section, a plaintiff must prove (1) damage suffered, (2) a causal connection between the action or omission by defendant, and (3) that said act or omission was negligent or wrongful. Hernandez v. Fournier, 80 P.R.R. 94, 97 (1957).

The "of and concerning" requirement, when seeking redress under Article 1802, is discussed at length is some Puerto Rico decisions. See Rodriguez v. El Vocero de Puerto Rico, Inc., 94 J.T.S. 13, p. 11503 (P.R. 1994), cert. denied, 114 S.Ct. 2744 (1995). In Rodriguez, an action was filed under Article 1802, P.R. LAWS ANN. tit. 31, § 5141 (1956), against El Vocero for the publication of allegedly defamatory information against Carlos Rodriguez, who at the time was Criminal Investigations Director of the Police of Puerto Rico, Ponce Area. Rodriguez and his wife Emerita Mercado, sought redress for the alleged damages caused by the El Vocero publication. El Vocero moved to dismiss the cause of action of the wife of the person mentioned in the news report, because she was a third-party not mentioned or identified in any way. The Supreme Court of Puerto Rico confirmed the trial court's decision and ruled that Emerita Mercado had a cause of action for damages and mental anguish resulting from the published information.

Plaintiff states in its surreply that the exception established in Rodriguez, where a third-party plaintiff recovered damages contingent on the defamed person's principal action, applies to

-13-

the case at bar. This assertion is wrong. Following <u>Rodriguez</u>, a third-party can recover damages under the "of and concerning" doctrine only in favor of spouses and children seeking to recover for personal suffering and mental anguish claimed under Puerto Rico law. The Plaintiff, in the case at hand, is seeking redress for alleged loss of business not for personal suffering and mental anguish, therefore, the <u>Rodriguez</u> exception does not apply. Therefore, for the reasons stated above, the Court Defendant's motion to dismiss as Plaintiff's first cause of action for defamation from continuing course of conduct is **GRANTED**.

## V. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

To state a claim for intentional interference with prospective economic advantage, a plaintiff must plead: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; (5) economic harm to the plaintiff proximately caused by the acts of the defendant." <u>See</u> <u>General Office Prods. v A.M. Capen's Sons,</u> 115 D.P.R. 553, 559 (1984); <u>Dolphin Int'l of P. R., Inc. v Ryder Truck Lines, Inc.,</u> 127 D.P.R. 869, 879 (1991); <u>see also</u> <u>LiMandri v. Judkins,</u> 52 Cal.App.4th 326, 339, 60 Cal.Rptr.2d 539 (4th Dist. 1997). "A plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." <u>Della Penna v. Toyota Motor Sales of United States,</u> 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995).

In the instant action, the Plaintiff sold vehicles to independent Isuzu dealers in Puerto

-14-

Rico and the United States Virgin Islands, which then in turn sold the vehicles to consumers. The Plaintiff does not identify the business relationship that Defendant's published statements interfered with. A claim for interference with advantageous business relationships must specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior. A complaint that only refers in general terms to potential sales that would have existed but for defendant's conduct, without identifying specific existing relationships, fails to state a claim upon which relief can be granted. See General Office Products v A.M. Capen's Sons, 115 D.P.R. 553, 559 (1984); Dolphin Int'l of P. R., Inc. v Ryder Truck Lines, Inc., 127 D.P.R. 869, 879 (1991); see also PPX Enters. Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 269 (2d Cir. 1987); Kramer v. The Pollack-Krasner Found., 890 F.Supp. 258, 230 (S.D. N.Y. 1995). Accordingly, this third claim for relief is **DISMISSED**.

## VI. CONCLUSION

Because the First Amendment shields the statements made by Consumers Union from being sued by Emerito Estrada Rivera-Isuzu, Inc., of Puerto Rico, this case must be dismissed, pursuant to Fed.R.Civ.P.12(b)(6). Specifically, all claims by Emerito Estrada Rivera-Isuzu of Puerto Rico, Inc. must be dismissed because none of the alleged statements are "of and concerning" the Plaintiff.

WHEREFORE, Defendant's Motion To Dismiss (Docket No.6) is **GRANTED**, and the complaint is hereby **DISMISSED**.

IT IS SO ORDERED.

Date: September 30, 1999

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

-15-